IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $309,866.00 IN UNITED STATES CURRENCY <br><br> Defendant. | Civil Action No. 2:23-cv-131 |

**VERIFIED COMPLAINT FOR FORFEITURE**

AND NOW comes the United States of America, by and through its counsel, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Jill L. Locnikar, Assistant United States Attorney for the Western District, and respectfully represents as follows:

1. This is a civil action *in rem* for forfeiture to the United States of $309,866.00 in United States currency (the "Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6).

2. Jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. §§ 1395 and 1355.

3. On July 25, 2022, at 5:50 p.m., while monitoring traffic along Interstate 76 at mile marker 123.4 westbound of I-76 within Stoneycreek Township, Somerset County, Pennsylvania, a Pennsylvania State Police ("PSP") trooper observed a silver Nissan Frontier (the "Vehicle") with a California license plate traveling in the left lane. The PSP trooper noted that the Vehicle had window tint that prohibited the trooper's vision into the Vehicle. The PSP trooper also noted

1

that the Vehicle did not have the headlights activated as required by posted signage on the Pennsylvania Turnpike.

4. The PSP trooper followed the Vehicle in the left lane and queried the registration information. The Vehicle was registered to Edgar Medina of Spring Valley, CA, which is known as a source of supply for narcotics.

5. Spring Valley, CA is a city located in Southern California, outside of San Diego, and is approximately 20 miles north of the United States/Mexico border. Cities and towns in this geographical region are known to be source areas for the distribution of narcotics. Conversely, proceeds of narcotics trafficking are often transported to these regions.

6. Based on the window tint and headlight violations, the PSP trooper initiated a traffic stop at mile marker 122.0, Stoneycreek Township, Somerset County. The operator of the Vehicle pulled over immediately and activated his hazard lights. The PSP trooper noted that, based on experience, drivers involved in criminal activity will often attempt to be overly cautious in order to deflect suspicion from law enforcement and appear as someone who has concern for the officer's safety.

7. The PSP trooper located three occupants in the vehicle, a driver and two passengers – a woman and a toddler. The driver was extremely nervous when producing operator documentation for the Vehicle. The driver produced a state driver's license identifying him as Edgar Medina-Mora ("Medina-Mora").

8. The PSP trooper explained to Medina-Mora the reasons for the traffic stop and stated he was issuing a warning. Medina-Mora continued to act nervous and during the stop, gave the PSP trooper conflicting statements about traveling to California and also to Georgia.

At some point, the PSP trooper told Medina-Mora that he was completely off his route if he was traveling to Georgia.

9. Medina-Mora told the PSP trooper that he was in Philadelphia for a couple of days and that the long trip was difficult with a child because he had to make frequent stops. Medina-Mora further stated to the PSP trooper that they randomly chose Philadelphia to visit for a few days.

10. Medina-Mora said that he left California on July 20th, which was five days before the traffic stop. He said that he stayed in a Sheraton hotel but was not sure where it was located in Philadelphia. An automated license plate reader System showed that Medina-Mora most likely left California sometime on July 21st. Medina-Mora told the PSP trooper that they went to Philadelphia to "hang out and see what's up."

11. Medina-Mora stated to the PSP trooper that he operated his own concrete business in California and had not taken a vacation in two years. When asked how much he makes, Medina-Mora offered that he makes around $2,000.00 per week. He also mentioned his daughter several times throughout the stop.

12. Medina-Mora told the PSP trooper that his family stayed inside at a Sheraton in Philadelphia for the duration of their visit because it was too hot to do anything outside. He also stated that he was looking for concrete pumps in Philadelphia because he was looking to move out of California. He also stated that he would be looking for pumps in Atlanta, GA and visiting his wife's family.

13. Upon the realization that he was not going towards Atlanta, GA, Medina-Mora changed his story and told the PSP trooper that he was going back to California.

14. When the PSP trooper asked the passenger for her identification, she was extremely nervous. She produced her passport identification card, and the PSP trooper identified the woman as Paola Lizbeth Ruedas Saavedra ("Saavedra").

15. Saavedra told the PSP trooper that she did not speak English. The PSP trooper conversed with her in Spanish. She told him that they were in Philadelphia on vacation and spent four days there. The information that Saavedra provided conflicted with the information that Medina-Mora provided.

16. The PSP trooper noted that it is typical for a legitimate motorist to be nervous at the initial stages of a traffic stop and their nervousness will eventually subside. In the case of Medina-Mora, his nervousness escalated.

17. The PSP trooper was aware that all of the circumstances pointed to drug smuggling activity. Medina-Mora told the PSP trooper that he did not have anything illegal in his car and gave the PSP trooper consent to search the Vehicle.

18. The PSP trooper provided a Spanish consent form for Medina-Mora to read and sign. After reviewing and signing the consent form, the PSP trooper asked Medina-Mora if he understood the form, and Medina-Mora affirmed that he understood it.

19. Medina-Mora told PSP trooper that he did not have any illegal contraband and did not have more than $2,000.00 in the Vehicle.

20. During the search of the Vehicle, the PSP trooper found a black duffle bag on the floor of the rear driver's side. Upon opening the duffle bag, the PSP trooper found the Defendant Currency.

21. PSP trooper advised Medina-Mora of his Miranda Rights and placed him in handcuffs. During post seizure activity, Medina-Mora changed his story and stated that he was to

be paid $20,000.00 to transport the Defendant Currency from Philadelphia to California. Medina-Mora also stated that he picked up the Defendant Currency from a vehicle in a parking lot in Philadelphia.

22. On July 25, 2022, canine Lesan, a certified Pennsylvania State Police drug detection dog, displayed alert behaviors to the odors of narcotics on the Defendant Currency.

23. The Defendant Currency was bundled in the following manner: 521 ($100), 823 ($50), 10,178 ($20), 1,001 ($10), 582 ($5), 136 ($1).

24. Based on the above, investigators determined that the Defendant Currency represented proceeds of narcotics trafficking and seized the currency for forfeiture.

25. Following the seizure, U.S. Customs and Border Protection instituted administrative forfeiture proceedings against the Defendant Currency. Medina-Mora filed a claim for the Defendant Currency in the administrative forfeiture proceedings. In his claim, Medina-Mora declared under penalty of perjury that he had an interest in the Defendant Currency because he earned it from his concrete business and was going to use it to purchase a Mixer Truck and a Concrete Pump Trailer. As a result of filing a claim, the United States has instituted this civil forfeiture action against the Defendant Currency.

26. Based on the foregoing, the Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for controlled substance and/or constitutes proceeds traceable to an exchange for a controlled substance and/or was intended to be used to facilitate any violation of the Controlled Substances Act.

WHEREFORE, the United States respectfully requests that process of warrant *in rem* issue for the arrest of the Defendant Currency; that Judgment of Forfeiture be entered in favor of the United States for the Defendant Currency; and that the United States be granted such relief as this Honorable Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*/s/ Jill L. Locnikar*
JILL L. LOCNIKAR
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
412-894-7429 (tel)
412-644-6995 (fax)
jill.locnikar@usdoj.gov
PA ID No. 85892 (AFF)

## VERIFICATION

I am a Special Agent with Homeland Security Investigations, Immigration and Customs Enforcement, Department of Homeland Security, and the case agent assigned to this case.

I have read the contents of the foregoing complaint for forfeiture and the statements contained therein are true and correct to the best of my knowledge and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of January, 2023.

QUINN MAYNARD
Special Agent
Department of Homeland Security,
Homeland Security Investigations